# Third District Court of Appeal

## State of Florida

Opinion filed May 12, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-175
Lower Tribunal No. F17-23762

_____

**Earl Brannon,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Multack, Judge.

Carlos J. Martinez, Public Defender, and Howard K. Blumberg, Special Assistant Public Defender, and Daniela Tenjido and Mary Rojas, Certified Legal Interns, for appellant.

Ashley Moody, Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellee.

Before SCALES, MILLER and LOBREE, JJ.

SCALES, J.

Appellant Earl Brannon was convicted of two counts of criminal trespass and one count of resisting arrest without violence. He appeals his convictions on the sole ground that the trial court erred by upholding the State's Melbourne[1] challenge to Brannon's attempted peremptory strike of a potential juror during jury selection. We reverse Brannon's conviction and remand for a new trial because the record does not support the trial court's finding that Brannon's race-neutral reason for exercising the strike was not genuine.

**I. Facts**

In this criminal prosecution, all of the State's witnesses were expected to be police officers; accordingly, the State and the defense sought to probe prospective jurors about their views of the police. Both sides sought to learn how each juror would weigh a police officer's testimony. A theory of the defense at trial was that the arresting officers were covering up an excessive use of force in their arrest of Brannon, who claimed to be an innocent bystander at the scene of a burglary.

During voir dire, Juror 14, a male of Hispanic descent, disclosed that both his sister and his brother-in-law were employed in law enforcement. The trial court asked Juror 14 whether he had ever been pulled over by a

---

[1] Melbourne v. State, 679 So. 2d 759 (Fla. 1996).

police officer for a traffic stop, and Juror 14, replying that he had, explained that he was once issued a ticket for a broken taillight, and thereafter immediately repaired the taillight and paid the ticket.

After Brannon sought to exercise a peremptory strike on Juror 14, the State interposed a Melbourne challenge, requesting a race-neutral reason for the strike and asserting: "This is now the second male of the Latin [descent] that they've struck." In response, Brannon's counsel stated that Juror 14's immediate payment of the traffic ticket and repair of the taillight suggested that the juror wanted to "curry favor" with the police.

Rather than asking the State to rebut Brannon's counsel's response, the trial court proceeded to rule on the State's Melbourne challenge, stating, in relevant part: "I didn't get the sense that [Juror 14] fixed the ticket to curry favor with the police officers. . . . He just said that he fixed what was wrong with his car, it was a taillight. . . . I'm going to deny the cause.[2] I don't find it to be [sic] genuine reason. He's on the panel."

Juror 14 was seated, the jury convicted Brannon, and this appeal ensued.

---

[2] Because Brannon was attempting to exercise a peremptory, rather than a for-cause, strike on Juror 14, we assume that the trial court simply misspoke in how it characterized the proposed strike.

3

**II. Analysis**

*A. The Melbourne Framework and Our Standards of Review*

Melbourne provides the following framework for when a party objects to another party's use of a peremptory strike for alleged racially motivated reasons:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requests are met (step 1), the court must ask the proponent of the strike the reason for the strike.
>
> At this point the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.

Melbourne, 679 So. 2d at 764 (footnotes omitted).

This case requires us to analyze the determinations made by the trial court in conducting steps 2 and 3 of the Melbourne analysis, and therefore implicates the different standards of review that we apply to each determination. After a party (here, the State), makes the required objection and the proponent of the strike (here, Brannon) asserts its race-neutral reason for exercising the strike, Melbourne's step 2 requires the trial court

4

to determine whether the proffered race-neutral reason is facially race-neutral. If so, <u>Melbourne</u>'s step 3 requires the trial court to determine whether the proffered race-neutral reason is merely a pretext hiding an underlying unlawful discriminatory purpose (i.e., the genuineness determination).[3] <u>Greene v. State</u>, 718 So. 2d 334, 335 (Fla. 3d DCA 1998).

In its genuineness determination (<u>Melbourne</u>'s step 3), the trial court must "satisfy itself that the explanation is not a pretext." <u>Davis v. State</u>, 691 So. 2d 1180, 1183 (Fla. 3d DCA 1997). The factors relevant to the trial court's genuineness inquiry include the "racial make-up of the venire, prior strikes exercised against the same . . . racial group, or singling out the juror for special treatment." <u>Norona v. State</u>, 137 So. 3d 1096, 1097-98 (Fla. 3d DCA 2014) (quoting <u>Wynn v. State</u>, 99 So. 3d 986, 989 (Fla. 3d DCA 2012)).

When reviewing the trial court's step 2 determination of whether the proffered reason for the strike is race-neutral, we "simply review the facial neutrality of the reason." <u>Greene</u>, 718 So. 2d at 335. We review the trial court's ultimate determination of pretext "primarily on an assessment of credibility," therefore implicating the abuse of discretion standard. <u>Wynn</u>, 99

---

[3] If the trial court, in its step 2 <u>Melbourne</u> inquiry, determines that the proffered reason is not race-neutral, then obviously the trial court is compelled to disallow the strike and need not proceed to <u>Melbourne's</u> step 3.

So. 3d at 988. Notwithstanding this deferential standard, however, a trial court's determination that a strike is pretextual will be reversed by the appellate court if there is no record support for the trial court's finding. Julmice v. State, 14 So. 3d 1199, 1204 (Fla. 3d DCA 2009); Hamdeh v. State, 762 So. 2d 1030, 1032 (Fla. 3d DCA 2000).

Importantly, "[t]hroughout this process, the burden of proving purposeful discrimination never leaves the opponent of the strike," and the exercise of a peremptory challenge is presumed to be nondiscriminatory. Hamdeh, 762 So. 2d at 1032 (citations omitted). And, the objector to a strike has "a heavy burden to show" that the peremptory strike is being sought solely because of the potential juror's race. Id.

### B. *Application to the Instant Case*

With these principles in mind, we now turn to the trial court's disallowance of Brannon's preemptory strike on Juror 14.

#### a. Melbourne's Step 2

It is not entirely clear on this record whether the trial court made the determination of whether Brannon's counsel's proffered reason for the strike was facially race-neutral (Melbourne's step 2). As discussed in more detail below, immediately after Brannon's counsel provided his response to the State's Melbourne challenge, the trial court, without articulating whether

6

the proffered reason was race-neutral, determined it was not "[a] genuine reason." Hence, we assume that, because the trial court reached the genuineness inquiry (Melbourne's step 3), that it determined – albeit implicitly – that the proffered reason for the strike was race-neutral. Otherwise, as mentioned in footnote 3 of this opinion, the trial court would have disallowed the strike without reaching the genuineness issue.

In any event, while the stated rationale – Juror 14's immediate repair of the taillight and payment of the ticket evidenced a desire to curry favor with law enforcement – may have been feeble, it was facially race-neutral.[4]

b. Melbourne's Step 3

We are concerned, however, with the trial court's genuineness determination under Melbourne's step 3: whether Brannon's proffered reason for the strike was merely pretextual. While we review the genuineness determination under an abuse of discretion standard, the determination must be supported by the record. Julmice, 14 So. 3d at 1204. Further, as mentioned above, factors relevant to this determination include

---

[4] As noted above, the record indicates a more cogent race-neutral reason to support the strike: that family members of Juror 14 work in law enforcement. See Chambers v. State, 682 So. 2d 615, 616 (Fla. 4th DCA 1996) (holding that a familial relationship to a law enforcement officer is a constitutionally permissible basis for a peremptory challenge).

the racial make-up of the venire, prior strikes exercised against the same racial group, and singling out the challenged juror for special treatment. Norona, 137 So. 3d at 1097-98.

While the record reflects that, before exercising a peremptory strike against Juror 14, Brannon exercised one prior peremptory strike against another Hispanic male, there is no record evidence that this one, prior strike was racially motivated. Similarly, there is no record evidence that Brannon tried to exercise strikes against any other Hispanic venirepersons. This, coupled with the absence of *any evidence* regarding the racial make-up of the venire, makes it impossible for us to find the necessary support in the record to uphold the trial court's genuineness finding.

After Brannon proffered his race-neutral reason for the strike, despite the State's "heavy burden" to establish a discriminatory intent behind the strike, Hamdeh, 762 So.2d at 1032, the trial court neither asked the State for argument regarding the genuineness of the proffered reason, nor did the trial court articulate a rationale for its genuineness determination. While this Court has made it clear that Melbourne does not require a trial court to expressly articulate its thought process in making a genuineness determination, Norona, 137 So. 3d at 1098, our case law does require the record to support the trial court's genuineness determination. Julmice, So.

3d at 1204; <u>Hamdeh</u>, 762 So. 2d at 1032; <u>see also</u> <u>Senatus v. State</u>, 40 So. 3d 878, 878 (Fla. 3d DCA 2010).

**III. Conclusion**

Because the record does not support the trial court's determination that Brannon's proffered reason for exercising its peremptory strike on Juror 14 was not genuine, we are compelled to reverse Brannon's convictions and remand for a new trial.

Reversed and remanded.